MURRAY F. SMITH *v.* CITY OF VICKSBURG.

MUNICIPALITIES. *Bonds. Code* 1892, §§ 3014 *to* 3017. *Limit on bond issues. Charter of Vicksburg. Amendment of November,* 1902. *Adoption of code sections.*

Under the charter of the city of Vicksburg as amended, November 4, 1902, by the adoption of Code 1892, §§ 3014, 3015, 3016, and 3017, substituting the word "amendment" for "chapter" in the last line of sec. 3014, thereby providing for the issuance of bonds by the city within certain limits generally, but without limit on the amount so far as concerns bonds issued to raise funds to liquidate any indebtedness existing when the amendment became operative, the city is without power to issue bonds in excess of the statutory (charter) limit for the purpose of paying debts contracted after the amendment was adopted, although the revenues of the city, to the amount of the aggregate of said debts, arising during the year in which they were contracted had been diverted from their payment and appropriated to other debts contracted before the amendment became effective.

FROM the chancery court of Warren county.

HON. WILLIAM P. S. VENTRESS, Chancellor.

Smith, the appellant, was complainant, and the city of Vicksburg, the appellee, was defendant in the court below. From a decree in defendant's favor, the complainant appealed to the supreme court. The facts are stated in the opinion of the court.

*Smith, Hirsh & Landau,* for appellant.

Section 1 of the amendment is a copy *verbatim et literatim* of Code 1892, § 3014; therefore the same rules of construction apply both to sec. 1 of the amendment and sec. 3014 of the code. Under these sections the municipality is authorized to issue bonds or other obligations for certain purposes, not exceeding seven per cent of the assessed value of its taxable property, unless authorized by two-thirds of the qualified electors, and in no case shall the amount issued exceed ten per centum

of the assessed values, but the limit on the amount shall not apply to "bonds or other obligations issued . . . to raise funds to liquidate any indebtedness when this chapter (amendment) becomes operative."

This provision was inserted in the code because of the fact that the legislature must have known that at the time of the adoption of the code there were municipalities whose bonded indebtedness equaled seven per cent of the assessed value of their assessable property, and at the same time owed other debts in excess of said seven per cent for which provision had to be made. In other words, the code was simply to take effect in the future, and the municipalities then existing would have had the right to provide for the payment of all debts then existing by issuing 'obligations or bonds, even if the aggregate exceeded said seven per cent. There was no intention on the part of the legislature to authorize repudiation in any form. It wanted the debts to be paid, and in many instances the only feasible way to arrange the payment of a debt is to convert it into a bonded obligation. The municipalities were given the right to provide for the payment of their floating indebtedness by exchanging for pressing cash obligations notes or bonds, payable out of future revenues; provided, however, that the notes or bonds were only given for existing indebtedness, although said notes or bonds added to the funded debt would exceed seven per cent of the assessment. We submit that the statutes cannot be interpreted in any other way if effect is to be given to the words in the concluding part of sec. 3014, which we have quoted. If our view is correct, then the city of Vicksburg, on November 4, 1902, when the amendment was adopted, was empowered to issue bonds or obligations in excess of its funded debts to raise funds to liquidate the $100,000.00 debt then existing, but we fear it is without power to issue bonds for indebtedness contracted since that time. The complainant is a taxpayer, and desires to have the city's credit restored, and is, therefore, perfectly willing to have the $100,000 worth of

bonds issued if their validity cannot be assailed, so that they can be floated at par. He feels that he and the city would be benefited if this arrangement can be affected, but, of course, with the understanding that the bonds are valid and are not to be disposed of for less than par, and therefore the validity of the bonds should be determined before they are offered for sale. Should the bonds be negotiated without previous adjudication, and should be hereafter held invalid, the defendant might be subjected to a charge that its obligations have been repudiated, and its credit thereafter would necessarily be impaired.

Wishing to remove all doubts relative to the power of defendant, the complainant institutes this suit, and respectfully requests that a speedy hearing be granted.

*Dabney & McCabe,* for appellee.

That the amendment is legal and valid there seems to be no room for contention. The constitution authorized the legislature to pass a law authorizing the city to amend its own charter by an ordinance. The city did amend its charter by such ordinance, whereby it became authorized to issue any amount of bonds that might be necessary to take up and pay off the outstanding indebtedness then existing.

No one would doubt if the city of Vicksburg had been incorporated under ch. 93 of the code of 1892 it would have the right to issue bonds under that section. If, then, the city would have the right if created under that chapter to issue the proposed bonds—subject, of course, to the provisions of sec. 3014—there is no doubt but that its charter could be so amended as to give that right, because the right to amend is coequal with the right to create, and the law which authorizes the creation of a municipality, with certain powers, authorizes an amendment of the charter for the purpose of giving it those same powers. If the city had volunteered to come under the municipal chapter, it would have had the right to issue these bonds under sec. 3014.

The only other question for the consideration of the court is whether or not the debt now existing existed at the time the amendment was made. We entertain no doubt that the amendment covered it if it existed at that time, and that the board is authorized to issue bonds to pay the debt off. That it is the same debt we do not think there is any doubt. The bill alleges, and the answer admits, what is undoubtedly a fact: that at the time the amendment was adopted the city owed $100,000 of floating debt, which had accumulated from year to year.

It is further alleged and admitted that since that time the revenues of the city have been just about equal to its fixed charges for light, water, police, and other expenses of one kind and another. The result is, or rather has been, that while a portion of this debt due at the time this amendment was made has been paid off, another debt was substituted in lieu of it, and, as has been aptly said in the bill of complaint, the board "has been robbing Peter to pay Paul."

Cox, J., delivered the opinion of the court.

This is a friendly suit by Murray F. Smith against the mayor and aldermen of the city of Vicksburg to have judicially ascertained and determined whether the latter can issue bonds of the city of Vicksburg to the amount of $100,000 to pay off its floating indebtedness. The bill avers that the outstanding bonded indebtedness of the city is $475,300, and the real and personal assessment on property within its limits for 1904 was $7,016,420, and that on November 4, 1902, the floating indebtedness of the city was fully $100,000; and, as the revenues of the city rarely exceed its expenditures, $100,000 of the indebtedness on January 11, 1905 (stated in another place to have been $127,285.33), is, for all practical purposes, the same indebtedness that existed on November 4, 1902. The city, to use a current phrase, simply "borrowed from Peter to pay Paul," and the defendant still owes a floating indebtedness of about $106,000. The bill further avers that while the city of

Vicksburg. did not elect to come under the provisions of our code chapter on municipalities, the municipal authorities of the city of Vicksburg, on November 4, 1902, had its charter amended in certain particulars, copies of which amendments are attached as exhibits. An inspection of the exhibits shows them to be identical in terms with Code 1892, § § 3014–3017, with the single exception that the word "amendment" is substituted for the word "chapter" in the last line of sec. 3014. The bill charges that the municipal authorities are now contemplating an issue of bonds to pay its floating indebtedness, etc. The bill prays that the defendants be restrained from issuing bonds for any purpose until they have procured an authoritative declaration from a court of competent jurisdiction that their right to issue said bonds for the purpose of paying existing indebtedness, and for the purpose of paying current expenses of the city, and for the purpose of paying outstanding loan warrants, can be upheld.

The answer admits the allegations of the bill, admits that defendants contemplate issuing the bonds as charged, and asks that the city's right to issue bonds to an amount necessary to take up the present floating debt of the city, amounting to in the neighborhood of $100,000, be determined in this proceeding, and settled definitely for all time to come.

This cause was heard on the bill and answer, and it was ordered, adjudged, and decreed that the mayor and aldermen of the city of Vicksburg are authorized to issue bonds not exceeding $100,000, and that complainant is not entitled to an injunction restraining the issuing of said bonds, from which decree complainant prosecuted an appeal to this court.

We are specially requested to settle two questions at law. The first of these is whether the amendments to the charter of the city of Vicksburg, above herein referred to, approved November 4, 1902, are now operative. It is averred in the bill that the city of Vicksburg amended its charter in certain particulars, as above set out in this opinion. The court cannot de-

termine from an inspection of the record whether these amendments were adopted in strict compliance with the provisions of sec. 3039 of the code, which prescribes the manner in which charters of municipalities may be amended. If they were so adopted, they are undoubtedly operative, and have become the organic law of the city with regard to the issuing of bonds.

The second and principal question is to determine what limit, if any, there is to the city's power to issue bonds to liquidate its indebtedness. Section 1 of the amendment, approved November 4, 1902, which is identical with sec. 3014 of the code, except as noted, provides that the "mayor and aldermen, for the purpose of raising money for the erection of municipal and school buildings and the purchase of such buildings or land therefor and the improvement and adornment thereof; for the erection and purchase of waterworks, gas, electric, and other plants; the establishment of a sewerage system; the protection of the municipality from overflow, from caving banks, and other like dangers; improving or paving streets; and for the liquidation of existing debts of the municipality, may issue the bonds or other obligations of the city, not to exceed in amount, including all outstanding bonds, seven per centum of the assessed value of the taxable property of the municipality, unless authorized by two-thirds of the qualified electors thereof; but in no case shall the amount exceed ten per centum of the assessed value. But the limit on the amount shall not apply to bonds or other obligations issued on liquidation or to raise funds to liquidate any indebtedness existing when the amendment becomes operative." This section is the measure of the city's right to issue bonds. It prescribes the purposes for which they may be issued, and limits the amount. For all the purposes enumerated, the city may issue bonds amounting in the aggregate to seven per centum of its assessed values, and, with the consent of two-thirds of its qualified electors, may issue bonds up to ten per centum of its assessed value. But the limitation does not apply to bonds issued to liquidate an indebtedness

existing when the amendment became operative. As to bonds issued for this purpose, the city was left untrammeled, and might have issued bonds to any amount necessary to liquidate its then existing indebtedness; and it may now, without regard to the limit, issue all the bonds needed to liquidate all its present floating indebtedness which actually existed at the time the amendment was adopted. So far there seems to be no special difficulty in the construction of this amendment. We apprehend that the doubt in the mind of appellant and of the city authorities is whether or not that portion of the present floating indebtedness which did not actually exist at the time the amendment was adopted, but which has since been contracted for the city's ordinary current expenses, the same not being paid out of current revenues because these were used to pay deficits from former years, may now be provided for by a bond issue which would swell the city's bonded indebtedness beyond the limits prescribed by the amendment. We resolve this doubt in the negative. The amendment is the measure of the city's power for the issuance of bonds. It must be strictly construed. The city's power is not to be enlarged by strained or doubtful constructions. The fact that the city's present floating indebtedness is in amount about what it was November 4, 1902, and that past deficits have been paid out of current revenues, the same thereby not sufficing to pay all current expenses (this process being referred to in the bill as "borrowing from Peter to pay Paul"), and that this process has left the city a floating indebtedness of about $100,000, does not support the argument that this indebtedness was existing at the time the amendment was adopted. All indebtedness actually incurred since the adoption of the amendment is within the limitation therein prescribed, and cannot be provided for by a bond issue, which, added to outstanding bonded indebtedness, would exceed the limit prescribed in the amendment. The decree below is therefore erroneous as to so much of the present floating indebted-

ness as has been contracted since the adoption of the amendment.

*Reversed and remanded for a decree in accordance with this opinion.*