### CITY OF HAZLEHURST v. JOHN B. MAYES.

### [51 South. 890.]

MUNICIPALITIES. *Powers. Municipal bonds. Code* 1906, §§ 3346, 3415. *Parks.*

Municipalities, operating under the code chapter, Code 1906, ch. 99, entitled "Municipalities:"—

(*a*) Have no powers except those given them by the statute; and their

(*b*) Powers must be construed strongly against an asserted right not clearly given and cannot be extended by mere implication; and they

(*c*) Cannot issue bonds for the establishment of parks, such purpose not being an enumerated one for which bonds may be issued, under Code 1906, § 3346, authorizing the issuance of bonds as provided in Code 1906, § 3415, enumerating the objects for which bonds, in limited amounts, may be issued.

FROM the chancery court of Copiah county.

HON. G. GARLAND LYELL, Chancellor.

Mayes, appellee, was complainant in the court below; the city of Hazlehurst, appellant, was defendant there. From a decree overruling a motion to dissolve an injunction defendant appealed to the supreme court. The facts are stated in the opinion of the court.

*J. S. Sexton,* for appellant.

Under Code 1906, § 3314, the city of Hazlehurst, which is operating under the code chapter, has the power "to purchase and hold real estate, within the corporate limits, for all proper municipal purposes, and for parks."

Under Code 1906, § 3337, the city has the power "to exercise the right of eminent domain in the laying out of streets, avenues, alleys, and parks." And under section 3338, the city has power "to exercise full jurisdiction in the matter of streets,

sidewalks, sewers, and parks; to open and lay out and con-
struct the same; to repair, maintain, pave, sprinkle, adorn, and
light the same."

It is conceded, by all concerned, that if the city had eight
thousand dollars in its treasury, it could buy the property men-
tioned in the bill, to be used as a public park, but it is insisted
that section 3415 of the code is the full measure of the city's
power to issue bonds, and that the purposes mentioned therein
are the only possible purposes for which the city may raise
money by the issuance of bonds, and as the word "park" is
not used therein, the conclusion is reached that, under no cir-
cumstances, can any city in the state, operating under the code
chapter, issue its bonds for the purpose of purchasing a place
to be used as a public park. I insist that this construction
is too narrow and results in absurdity.

The legislature which enacted the law must be credited with
at least ordinary intelligence. It was bound to know that, with
our growing civilization, public parks were necessary for the
amusement and recreation of our people, and it certainly did
know, if it knew anything else, that if our cities were to own
them at all, they would have to issue bonds or other negotiable
securities therefor, for the reason that the purchase and im-
provement of a public park involves a considerable outlay and
the expenditure of more money than would ever be found lying
idle in the treasury.

In the instant case, the property which the city would take
over would have cost at least $15,000, though the city was to
get the same for $8,000, or really $6,000 under the agreement
that the banks would donate $2,000, and it is ridiculous to
suppose that the time would ever come when we would have
$15,000 lying idle in the treasury. A decent park for the city
of Jackson, Vicksburg, or Meridian, would cost from $100,000
to $250,000, and who would suppose that, in all the tide of
time these cities would have that amount of idle money in the

treasury for the purpose of purchasing and improving a place to be used as a public park ?

The result of the construction adopted by the court below is simply this, that no city or town in Mississippi, which has not already established a park, will ever establish one in the future in this state, because it is absolutely certain that there will never be found in the treasury of any of our cities or towns enough money to buy and improve a public park. Of course the law could be changed so as to permit it, but I insist that no change is necessary, and that, under our present statutes, the city of Hazlehurst has the power to issue the bonds sought to be issued.

Under section 3314 each city, town, or village has five different powers.

Under sections 3316 *et seq.*, the mayor and board of aldermen of every city, town, and village have power to do thirty-seven different things.

Under sections 3354 *et seq.*, the mayor and board of aldermen of cities and towns, but not of villages, have power to do eleven other things; and under section 3366, the mayor and board of aldermen of cities and towns, having more than six thousand inhabitants, have power to do six other things, and under sections of the code chapter on "Municipalities" other powers are enumerated and vested in the city and its officers. An examination of these powers in detail will show that many of the things which the towns and cities and their officers have power to do are quite as necessary as those mentioned in section 3415, for which municipal bonds may be issued, and to hold that section 3415 is the full measure of municipal authority to issue bonds in view of all the powers referred to, is strict construction with a vengeance.

It is elementary learning that "the power of public corporations are either express or implied. 'The former are those which the legislative act under which they exist confers in

express terms; the latter are such as are necessary to carry into effect those which are expressly granted and which must therefore be presumed to have been within the intention of the legislative grant.'" 1 Smith's Modern Law of Municipal Corporations, § 673. "Implied power of a municipal corporation is a power necessarily incident to the exercise of those powers expressly granted and directly and immediately appropriate to their exercise." Id.; *Gundling v. City of Chicago,* 176 Ill. 340, 52 N. E. 44; *People v. Chicago Gas Trust Co.,* 130 Ill. 268, 22 N. E. 798; *Chicago, etc., R. Co. v. City of Chicago,* 148 Ill. 141, 35 N. E. 881; *Mather v. City of Ottawa,* 114 Ill. 659, 3 N. E. 216.

The question of the power of municipal corporations to issue bonds is ably and exhaustively treated in the case of *Williamsport v. Commonwealth,* 84 Pa. St. 487, 24 Am. Rep. 208. The question there presented was one of power, and it was insisted "that a municipal corporation possesses no inherent power to issue bonds, and that in the absence of any such power in its charter, or express legislative authorization, the city is not bound thereby." In discussing that question, the court used the following language: "We may here observe that there is a marked distinction in this respect between private and municipal corporations. This distinction has been lost sight of in many of the adjudicated cases, and is perhaps one of the causes of the confusion into which this branch of the law has fallen." Further on in the opinion, the court, in speaking of the implied power of the municipal corporation in that case, used the following language: "Her implied powers include all such as are necessary to carry out the objects for which her charter was granted."

"A municipal corporation's power to issue negotiable securities may be implied from granted powers which could not otherwise be carried out." Rose's Notes on U. S. Reports, vol. 7, p. 939; *Desmond v. Jefferson,* 19 Fed. 486; *Holmes v. Shreve-*

*port,* 31 Fed. 119; *Commonwealth v. Williamsport,* 156 Mass. 72; *State v. School District,* 13 Neb. 81, 12 N. W. 928; *City of Williamsport v. Commonwealth,* 84 Pa. St. 496, 24 Am. Rep. 216; *Hays v. Gallon Gas, etc., Co.,* 29 Ohio St. 339.

The power to purchase, hold, and improve real estate for a public park, which is expressly given by our statute, involves the expenditure of more money than would ever be found in our city treasuries, and the implied power to borrow money for the purpose indicated necessarily follows. Many cases can be found, which, upon a superficial examination, would indicate the contrary view, but when thoroughly examined they do not militate against it.

*McNeil & Smylie,* for appellee.

Code 1906, § 3415, gives a municipality the power to issue its bonds for certain purposes therein stated, and these are the only purposes for which a municipality in this state has power to issue bonds.

Taken in the broad sense, the power to borrow money and issue bonds cannot be said to be among the implied powers of a municipal corporation. * * * The question for our consideration is, whether the power to issue bonds is one of the inherent powers of a municipal corporation in a limited sense; that is to say, for the purpose of providing for such expenditure as is strictly germane to the objects for which such corporations are created.

"Implied power springs from necessity. That which is not necessary cannot be implied." Is a park a necessity? If it be a necessity in the case of a large city, is it actually necessary and indispensable that a small town like Hazlehurst should have a park? It is but a very short distance in any direction to the natural woods, hills, valleys, and streams.

In construing the statute it is necessary to determine, if possible, the intention of the legislature. We notice that sec-

tion 3415 of the code gives a municipality power to issue bonds for those purposes which are the most indispensable and necessary to its well being. If a municipality has implied power to issue bonds for any purpose whatever, it would certainly have the implied power to issue bonds for the purposes mentioned in this section. Why then give it express power to do that which it has already the implied power to do? Counsel for appellant says that the legislature is composed of intelligent men who would not do a foolish or an absurd thing. Does not the maxim *"Expressio unius est exclusio alterius,"* apply in this case? Did not the legislature give in this section express power to issue bonds for all purposes, for which they intended a municipality should have power to issue bonds, and thereby actually prohibit a municipality from issuing bonds for any purposes except those actually expressed therein? If it had been the intention of the legislature that a municipality should have the power to issue bonds to purchase land for a park, it would have been easy to have written the word "parks" in section 3415. It seems to us that the only reasonable conclusion to be reached is that the legislature never intended that a municipality should have the power to issue bonds to raise money to buy land for a park.

If we concede for sake of argument that even in this state a municipality has implied power to issue bonds for some purposes, we ask for what purposes does this power exist? Who can determine and answer this question with authority except the court of last resort? Every time then a municipality attempts to issue bonds under implied power, the question, as to its power, must be passed on by the supreme court, in order to determine the legality of the bonds. A municipality might think that the law of necessity applies, but the supreme court might take a very different view of the matter. Who then is to draw the line marking off the purposes for which a city may under implied power issue bonds from those which it may

not? The legislature ought to draw the line, and we say that in section 3415 the legislature has drawn the line. Is not this the wiser and safer view to take? If municipalities desire power to issue bonds for other purposes, then let them apply to the legislature to have section 3415 amended so as to include other purposes, such as may have become necessary to meet the needs of "our growing civilization."

The argument of counsel for appellant, that because it takes a large sum of money to buy land for a park and that ninety *per centum* of the property within the town of Hazlehurst is owned by those voting for issuance of bonds, is of no force at all. The first question to be determined is, has a town or city in this state implied power to issue bonds for any purpose? If this question is answered in the negative, that settles the whole matter. If answered in the affirmative, then the question arises, how are we to determine the purposes for which it has the implied power to issue bonds? This power, if it exists at all, springs from necessity. It can be exercised only for purposes which are actually indispensable and necessary for the well-being of the municipality, the benefits flowing therefrom being enjoyed by all of its inhabitants. It is not difficult to see that a school building with proper grounds is a necessity. Waterworks, light plants, and a sewerage system are all necessities, contributing daily and almost hourly to the actual wants and needs of all those living within the corporate limits. Can we say that a park is in the same sense a necessity? What purpose would a park serve in the city of Hazlehurst? Simply a pleasure resort to be enjoyed by a few. If there is any implied power in any case, which we deny, it is to be decided upon a question of necessity and not upon how much money it takes or how many desire the thing, or how much property those desiring it own.

The fact that the legislature had, in code chapter 99, carefully worked out a scheme of government for municipalities

and has therein expressly granted so many powers, is forceful argument that it has expressly granted all the powers that it intended that a municipality should exercise.

All authorities agree that if there is a doubt as to the power to issue bonds, it must be resolved against the power.

We call special attention to the case of *Gause v. City of Clarksville,* 5 Dillon, 168.

TAYLOR, Special Judge,* delivered the opinion of the court.

This is an appeal by the city of Hazlehurst, appellant, from a decree of the chancery court making perpetual an injunction issued at the suit by Mayes, appellee, restraining the mayor and board of aldermen of the said city of Hazlehurst from issuing the bonds of the city in the sum of $8,000 for the purpose of buying and owning certain property, designated as "Lake Hazle and adjoining lands," to be used as a public park.

In this record there is only one question presented for the decision of this court, and that is whether or not the city of Hazlehurst can issue its bonds for the purpose of raising money with which to purchase the land mentioned to be used as a public park.

This city is a municipal corporation, operating under the Code chapter on municipalities. It is an elementary principle of law that as such it has no powers except those delegated to it by the state. It is equally well established that its powers are to be construed most strongly against a right claimed by it and not clearly given by the statutes. The officers of a municipality are not the agents of the people. They are merely officers elected to perform certain municipal or local governmental duties defined by the statutes of the state. These duties cannot be extended by mere implication to grave and important acts not authorized by law. Nothing but legislative grant can

---

* Mayes, J., being a brother of appellee, recused himself, and Oscar B. Taylor, Esq., a member of the supreme court bar, was appointed and presided as special judge in this case.

do this.   When there is any doubt as to whether or not a municipality has the power to do or not to do a certain thing, this doubt must be resolved against its charter powers, unless it is plainly manifest that the power is conferred to the municipality to act.   *Crittenden v. Booneville,* 92 Miss. 277, 45 South. 723.   Keeping these elementary facts, which have been announced in decision after decision, time and again, before us, let us look in the case that is now before us.

Counsel for appellant contends that since section 3314 of the Code of 1906 confers upon municipalities the power to purchase and hold real estate for parks, etc., they therefore have the implied power to issue bonds with which to raise the money necessary to make the purchase.   We believe a study of the statutes of this state will show that this ground is not well taken.   If the section referred to were the only expression the legislature had given on this matter, there might be some force in the argument.   But such is not the case.   There are two other sections which deal directly and explicitly with the matter.   Section 3346 of the Code of 1906 provides that the mayor and board of aldermen of municipalities have the power "to levy and collect special assessments and to issue bonds as hereinafter provided."   We believe that the legislature intended for these words to mean exactly what they say, and we take it that this is a limitation upon the power of a municipality to issue bonds except as provided.   If we turn to section 3415 of the Code of 1906, we find the provision that the Legislature has made for the issuance of bonds.   This section limits the power of municipalities to issue bonds in two ways: (1) By enumerating the objects for which they may be issued; (2) by limiting the amount.   The purchase of land to be used as a public park is not one of the objects enumerated in the section.   In the case of *Smith v. City of Vicksburg,* 86 Miss. 577, 38 South. 301, the second limitation was directly before the court for construction.   In that case Justice Cox says in speaking of this

section: "This section is the measure of the city's right to issue bonds. It prescribed the purposes for which they may be issued, and limits the amount." No one would argue that a city could exceed the amount which this section has fixed as the limit. If the limitation is good as to the amount of the issue, it is certainly equally as binding when it comes to the purposes for which they may be issued. If this were not true, what reason can be assigned to the Legislature for enumerating certain objects for which a municipality may issue bonds? The same section that gives a municipality the power to own and hold real estate for a park also gives it the power to hold and own real estate for schoolhouses, sewers, waterworks, etc. If the Legislature did not intend to enumerate the objects for which bonds may be issued, why did it make any mention of these things at all? They would certainly have the implied power to issue bonds to raise money with which to purchase real estate for schoolhouses—an absolute necessity for every community. And it would have been easy, if the legislature had intended for them to have this power as to parks, to have just written the word "parks" in the statute along with the other enumerated purposes. To hold that the Legislature meant for a municipality to have the implied power to issue bonds for the purchase of a park would be equivalent to simply adding this word to the section. It is plain and unambiguous as it is. It is not within the province of this court to add to the law as the Legislature has written it.

The Legislature doubtless knew the conditions as they exist in this state at this time—that we have no large cities or crowded centers; that our towns could possibly provide for acquiring these things not yet indispensable to our municipalities in Mississippi in some other manner than burdening the future generation with obligations for their purchase—and for this reason it deemed it proper to limit the objects for which bonds may be issued to those objects which not only necessitated a

large outlay of money, but which are absolutely necessary to the life and well-being of the people, daily and hourly, such as waterworks, sewers, schoolhouses, etc. If the Legislature had not limited them in this manner, there would be nothing to prevent a municipality from issuing its bonds up to the full amount for the purpose of securing the money with which to purchase a park, for instance. Suppose that this should be done, and it should then become absolutely necessary to the lives and the health of the people to own their own waterworks. The power would have all been used in providing for a luxury to most Mississippi municipalities, and there would be no way by which to provide for the health and lives of the people who live in them.

A close study of the decisions will show that, even in states where the Legislature has not undertaken to deal with the matter, the implied power of a municipality to issue bonds is an open question. And keeping in mind the fact that powers conferred upon them are to be strictly construed, and decided against the existence of the power if there is any doubt about it, also having before us these sections of the Code in which the Legislature expressly names the purposes for which a municipality may issue its bonds and limits the amount of the issues, with this court having already decided, as above mentioned, that the limitation as to the amount is binding, we are forced to arrive at the conclusion that the city of Hazlehurst has not the power to issue its bonds to raise money with which to purchase land to be used as a park.

Therefore the decree of the chancellor overruling the motion to dissolve the injunction and making it perpetual is affirmed.

*Affirmed.*

WHITFIELD, C. J., delivered the following dissenting opinion:

The single question involved in this case is whether the city of Hazlehurst had power to issue bonds to purchase a park.

My Brethren hold that it did not, and that holding is rested upon the single proposition, at last, that section 3415 of the Code of 1906 furnishes the only instances in which cities in this state may issue bonds.

I cannot concur in this view; it seems to me far too narrow and technical, and calculated greatly to hinder and impede municipalities in the exercise of powers necessarily implied in order to carry out the purposes of municipal existence. Section 3314 of the Code provides that municipalities shall have power to purchase and hold real estate within the corporate limits for all proper municipal purposes and for parks. Section 3337 provides power in municipalities to exercise the right of eminent domain in the laying out of streets, avenues, alleys, and parks. Under section 3338 the city has the power to exercise full jurisdiction in the matter of streets, sidewalks, sewers, and parks, and open, lay out, and construct the same; to repair, maintain, pave, sprinkle, adorn, and light same. Here, in brief, is full power given to purchase a park, and to exercise full jurisdiction over it in laying it out, beautifying and adorning it, and yet it is said by the majority that, unless the power has been expressly given for these purposes, the city has no implied power to issue bonds, since it is said a city cannot issue bonds in any instances for any other purpose than one of the purposes named specifically in section 3415. Now, it is too obvious for discussion that parks cost far more money than the current revenues of any city, such as we have in Mississippi, can furnish. Since this is true, unless the money with which to purchase a park can be raised by the issuance of bonds, it is obvious that there is not a city in Mississippi, under the opinion of the majority, which can hereafter buy a park, although the fullest power is given expressly authorizing the purchase and the exercise of full jurisdiction over parks, and although it is known, of all men, that a park is not merely a place where pleasure may be sought, but is absolutely essential

to the health of the inhabitants of cities. How is it possible to hold that section 3415 enumerates all the purposes for which municipal bonds may be issued? Let us analyze the statutes more closely. Under section 3314 each city has five different powers. Under section 3316 *et seq.* every city has power to do thirty-seven different things. Under section 3354 *et seq.* a city has power to do eleven other things. Under section 3366 a city of more than six thousand inhabitants has power to do six other things. And generally, without more specific enumeration, under different sections of the code chapters on municipalities, various other powers are enumerated and granted to the city for its exercise. A detailed examination of these powers will show that very many of the things which a city has power to do are quite as essential to its existence as a city as any of the things mentioned in section 3415, for which the majority say municipal bonds may be issued.

It seems to me that to hold, in the face of these various powers conferred, that municipal bonds may not be issued in execution of any of these purposes except the ones named in section 3415, is a construction so narrow and so technical as not to stand the test of reason or the test of the law with respect to the exercise of implied powers on the part of municipalities. For example, section 3314 provides not only for the purchase of parks, cemeteries, hospitals, and so on, but for the purchase, without the corporate limits, of pesthouses. Now, suppose a great epidemic of yellow fever should be visited upon a city such as we had in this state in the memorable year of 1878, and a pesthouse, or a number of pesthouses, should be necessary for that or for an epidemic of smallpox, or for an epidemic of Asiatic cholera, what is the inevitable result of the holding of the majority? Why, obviously, that the city would have no power under such terrible circumstances of dire necessity to even purchase pesthouses by the issuance of bonds. Could anything be more essential to the well-being of the city than the

purchase of pesthouses under such circumstances? Manifestly not. And, yet, it is held that, although section 3314 gives the power to buy pesthouses, to buy cemeteries, or to buy parks, or to buy hospitals, yet the city would have no power to issue bonds to pay for either pesthouses, or parks, or cemeteries, or hospitals, although each one of these would be an absolute necessity to the well-being of the city, simply because section 3415 enumerates some purposes for which bonds may be issued. How is it possible to maintain any such construction? In order to do so, it would manifestly be necessary to hold that section 3415 forbids expressly the issuance of bonds for any other purpose than the purposes named therein. But section 3415 does nothing of the sort; there is not a syllable in it forbidding the issuance of bonds other than those named. The language of the section is simply that, "for the purpose" of raising money for several different objects, immediately thereafter named, the city may issue its bonds not to exceed, in any event, ten *per centum* of the assessed value of the property. There is no inhibition against issuing bonds for the other purposes named in section 3314; none whatever. Section 3415 is nothing more or less than the enumeration of certain purposes for which bonds may be issued. It is not at all the exclusion of the right to issue bonds for other purposes. Section 3346, which provides that the municipality shall have power to levy and collect special assessments and to issue bonds as provided in the following sections, means nothing more than that bonds shall be issued in the manner so provided. It is in no sense an inhibition against the power to issue bonds for other purposes than those named in section 3415. It is a mere provision that bonds may be issued by a municipality; that is to say, in the manner in the chapter provided. It has no aspect toward limiting the purposes for which bonds may be issued.

In all that I have thus far said I have been dealing strictly with the statutory construction of this power. As peculiarly

applicable to the broad view which I am taking of all these different statutes and all these different powers given to municipalities about purchasing hospitals, cemeteries, parks, pesthouses, and the like, I quote from a very able opinion by Judge Elliot, in the case of *Rushville Gas Company v. City of Rushville,* 121 Ind. 206, 23 N. E. 72, 6 L. R. A. 313, 16 Am. St. Rep. 394, where he says, strictly pertinent to the point now under consideration: "But statutes are not to be considered as isolated fragments of law, but as parts of one great system. If there was any doubt as to the meaning of the act, it would be removed by considering it, as it is our duty to do, in connection with the general act for the incorporation of cities, for that act confers very comprehensive powers upon municipal corporations as respects streets and public works and contains many broad, general clauses akin to those which Judge Dillon designates as 'general welfare clauses.' Our own decisions fully recognize the doctrine that municipal corporations do possess, under the general act, authority as broad as that here exercised, and the operation of that act is certainly not limited or restricted by the act of 1883. Where a municipal corporation has authority to purchase property, it may issue its bonds in payment, unless there is some statutory or constitutional prohibition"—citing many authorities. Now, the act of 1883 referred to by Judge Elliot stands, in this discussion, in the exact place of section 3415, and Judge Elliot's decision is tantamount to saying that this court should find the implied power to issue bonds for other necessary municipal purposes named in the statutes without being limited to the purposes named in section 3415. Judge Elliot then proceeded: "Where a municipal corporation has authority to purchase property, it may issue its bonds in payment, unless there is some statutory or constitutional prohibition." Unless, therefore, section 3415 is an express prohibition of the issuance of bonds for any other purpose than those named therein, it is perfectly manifest that

the city had the implied power to issue bonds for any of the purposes named in section 3314. What, now, is the general law with respect to the implied power of a municipality to issue bonds? In a very elaborate note to the case of *De Voss v. City of Richmond* (18 Grat. [Va.] 338) 98 Am. Dec. 665, it is said: "Implied power to borrow.—Upon the question of implied power to borrow money, two distinct classes of cases may arise: (1) Where the charter confers only ordinary municipal powers; and (2) where the charter or statute confers powers or imposes duties, in addition to the grant of ordinary corporate powers, of such a character that their purposes cannot be fulfilled by the exercise of the ordinary revenue provisions, because of their requiring the immediate expenditure of large sums of money. On the first question there is a direct conflict both in the authorities and in the opinions of the authors. In order to obtain the means to carry on the ordinary functions of a local government, municipalities have a delegated power to levy taxes. It would seem, therefore, that, with this means of raising money for these purposes, the existence of an implied power to borrow and issue bonds to obtain money for the same purposes is very appropriately questioned. In the present state of the authorities, however, the question must be considered an open one. A full discussion and statement of the decided cases will be found in the note to *Bank of Chillicothe v. Mayor of Chillicothe* [7 Ohio, 31, pt. 2] 30 Am. Dec. 190-194. The second question is not incumbered with any serious conflict. It is admitted, even in the cases which deny an implied authority from a grant of general powers, that express authority, either in the charter or by special statute, to perform acts which require the expenditure of sums of money which the ordinary revenue provision will not permit of, will authorize the municipality to borrow money for such purposes. See the note to *Bank of Chillicothe v. Mayor or Chillicothe,* 30 Am. Dec. 190; *Gause v. Clarksville,*

5 Dill. 165 [Fed. Cas. No. 5,725]; *Mayor v. Ray,* 19 Wall. 468 [22 L. Ed. 164]; *Schwackhamer v. Town of Hacketts-town,* 37 N. J. Law, 191."

In volume 7 of Rose's Notes on the United States Reports, at page 939, it is said that the holding of the United States supreme court in *Police Jury v. Brilton,* 15 Wall. 556, 21 L. Ed. 251, to the effect that a municipal corporation's power to issue negotiable securities may be implied from granted powers, which could not otherwise be carried out, is the settled doctrine, and has been implied in various cases and for various purposes referred to in the note, as, for example, for purchasing a fire engine, and for street improvements, and for various other purposes. In the Modern Law on Municipal Corporations by John W. Smith (volume 1, § 673), the doctrine is thus stated: "Implied power of a municipal corporation is the power necessarily incident to the exercise of those powers expressly granted and directly and immediately appropriate to their exercise, and the authorities in note 3 fully sustain the proposition."

What is the power which has been expressly granted by section 3314? Why, obviously, the power to purchase cemeteries, hospitals, pesthouses, parks, and various public utilities mentioned, such as electric lights, waterworks, etc., etc. The city, therefore, had the power to purchase a park expressly granted. In the next place, it is obvious that the cost of a park is far beyond the amount of any current revenue. Third, it is just as obvious that a park is essential to the health of the inhabitants of a city, not being merely a pleasure ground. Those who have seen the sweating, panting thousands in Central Park in New York City amid summer heats will not need to be told that a park is a necessity to the preservation of lives of the inhabitants of great cities. We have, then, the three elements—first, power to purchase, the inadequacy of current revenues to make the purchase, the necessity of the

park to the health of the city—and yet we are told that all these things do not show that the power to issue bonds with which to buy the park is a necessary incident of the power expressly granted, to wit, the power to buy. In other words, the city is given abundant authority to buy; the park is absolutely necessary to the health of the city, and yet there is no implied power that the purchase may be in a certain way made, to wit, by the issuance of bonds, the only available mode.

I appreciate fully, and concur most heartily in, what is said to the effect that the powers granted to a municipality must be strictly construed; but a construction which destroys the very object and purpose of the powers expressly granted is not, in my judgment, construction of the power to issue bonds, but the destruction of the right to own a park at all, or to own a cemetery, or a hospital, or a pesthouse. All construction, in other words, must be reasonable; must conform to sound common sense; must subserve the very things for which municipal powers are given. The opinion goes the full length of holding that no municipal bonds can ever be issued under the present municipal chapter under any circumstances whatever, for any purpose whatever, excepting for the purposes named in section 3415. In other words, it absolutely holds that there does not exist, under our code chapter on municipalities, any implied power under which any municipality in this state can issue bonds. Surely, this consideration must show the unsoundness of the view of my Brethren.

A most important point to be kept in mind always in discussing the implied powers of municipalities is the kind and class of corporation involved. We have here a municipal corporation, not a *quasi* governmental corporation, like a board of supervisors, or a private corporation.

I close my discussion of the case with a quotation from the opinion of the supreme court of Pennsylvania, in the case of

*Williamsport v. Commonwealth,* 84 Pa. 487, 24 Am. St. Rep. 208:

" 'We may here observe that there is a marked distinction in this respect between private and municipal corporations. This distinction has been lost sight of in many of the adjudicated cases, and is perhaps one of the causes of the confusion into which this branch of the law has fallen.' Further on in the opinion the court, in speaking of the implied power of the municipal corporation in that case, used the following language: 'Her implied powers include all such as are necessary to carry out the objects for which her charter was granted.' Reviewing the statement found in Dillon on Municipal Corporations that, 'We regard as alike unsound and dangerous, that a public or municipal corporation possesses the implied power to borrow money for its ordinary purposes, and, as incidental to that, the power to issue commercial securities, the cases on this subject are conflicting, but the tendency is toward the view above indicated,' the court used the following language: 'The ground principally relied upon by the learned author, and others who take this view of the question, is that the power is a dangerous one. But showing that the power is dangerous does not prove that it does not exist. Power is always dangerous. Yet is must be lodged somewhere, or human governments cease to exist. * * * The dangerous nature of a power might be persuasive argument with the legislature why it should be denied to a municipal corporation, but cannot be accepted as a conclusive reason that it does not exist.' Referring to the cases reviewed by Judge Dillon in support of the text, the court held that each of these cases 'was evidently decided upon its own peculiar facts,' and added: 'With a single exception they are cases of public, as distinguished from municipal, corporations. The distinction between the two classes of corporations is marked. The term "municipal corporation"

has reference to incorporated villages, towns, and cities, as distinguished from other public corporations, such as counties and *quasi* corporations.' The court cites the case of *Bank of Chillicothe v. Mayor of Chillicothe,* 7 Ohio, 31, pt. 2 [30 Am. Dec. 185], and says: 'The case was decided upon the broad ground that if, in effecting any of the legitimate objects of the corporation,  \*  \*  \*  for which they were authorized to provide by ordinance, it became necessary to borrow money, the corporation might lawfully do it in the absence of express power in the charter, or of authorization by statute.' The court also cited the case of *Sturtevants v. City of Alton,* 3 McLean, 393 [Fed. Cas. No. 13,580], in which it was held that a municipal corporation 'having power to grade streets, etc., necessarily had power to make contracts respecting the same, and to issue bonds in payment therefor.' And the case of *Mullarky v. Cedar Falls,* 19 Iowa, 21, and also the case of *City of Galena v. Corwith,* 48 Ill. 423 [95 Am. Dec. 557], and many other cases, from which it concludes as follows: 'The foregoing cases rest upon the principle, which we think a sound one, that, where a municipal corporation has lawfully contracted a debt, it has the implied power, unless restricted by its 'charter or prohibited by statute, to evidence the same by a bill, bond, note, or other instrument; that the power to contract a debt carries with it by necessary implication the right to give an appropriate acknowledgment of such debt, and to agree with the creditor as to the time and mode of payment; that in the absence of any statutory provision there is no rule of law limiting the extent of the credit.'

"This was evidently the view taken of this subject by Mr. Justice Strong in *Commonwealth ex rel. Rainboth v. Councils of Pittsburg,* 41 Pa. 284, where he says: 'The power to execute and issue bonds, contracts, or other certificates of indebtedness belongs to all corporations, public as well as private, and is inseparable from their existence. It is for this that they

hold a common seal. No one would doubt that for a legal and authorized debt a municipal corporation might give its bond under its general corporate powers. If a bond given by such an obligor be void, it is not because of the form of the instrument, nor because general corporate powers do not warrant giving bonds, but because the debt for which the bond has been given was created without authority, against law, or without law.' Nor is this language of Mr. Justice Strong mere dictum. The question of implied power was squarely before the court and directly decided in that case. The act of assembly conferred no express authority on the city of Pittsburg to issue the bonds. It merely authorized it to subscribe to the stock of the Allegheny Valley Railroad Company. The very ground of the decision was that, because the debt contracted by the city in its subscription to the stock was lawful, the implied power existed to issue bonds in payment. The city had no power to subscribe for the stock without legislative sanction, for the reason that building railroads, or aiding the construction thereof, was not among the objects of its creation. Hence it is that, when a municipal corporation seeks to perform some act not in the line of its corporate duties, the power to do so must be the subject of express grant. But when such a power is given the grant thereof carries with it all the implied powers necessary to render it effective. The power of a municipal corporation to borrow money and issue bonds depends upon the fact whether the expenditure be for purposes authorized by its charter and made necessary and proper by its corporate duties. No one pretends that such corporations possess any implied power to borrow money to build a railroad, a steamship, or an opera house."

For these reasons, I dissent from the judgment of the court.