Mayor & Board of Aldermen of Pascagoula v. Delmas
*et al.*

[66 South. 329.]

1. Municipal Corporations. *Fiscal management. Issuance of bonds. Purpose. Construction of wharves. Authority to issue bonds. Special laws.*

Under Code 1906, section 3327, authorizing the issuance of bonds by municipal corporation organized under sections 2399-3446, for the establishment, alteration and changing of the channels of streams or watercourses, the bridging of the same, and bays; such municipalities have no powers, except those expressly given by the legislature, and the power to issue bonds cannot be implied, and a city so organized was not authorized to issue bonds to construct a wharf on a river flowing through the city as a part of a scheme to improve the river for navigation, to aid which the United States government had appropriated funds for dredging and deepening the channel, on condition that the city built a wharf.

2. Municipal. *Corporations. Bonds. Authority to issue. Special law.*

Under Laws 1914, chapter 147, section 1, subdivision "j"; authorizing cities to issue bonds for the construction of wharves, harbors, and under section 7, of the act declaring that the act shall not affect the validity of any bonds previously issued or authorized at an election held under existing law, and should not affect any private or local law in force authorizing the issuance of bonds for any purpose; where the aldermen of a city prior to such law had authorized the issuance of bonds to construct a wharf along a river, when it had no such authority, and there had been no election, because there had been no objection filed, the statute could not be construed as applying to all unfinished proceedings looking to the issue of bonds other than the classes enumerated and excepted, and was not retroactive, so as to validate wharf bonds which the city intended to issue.

3. Same.

Statutes not expressly made retrospective in terms are otherwise construed, if possible, and where retrospective are construed as narrowly as possible.

APPEAL from the chancery court of Jackson county.
HON. J. M. STEVENS, Chancellor.

Suit by I. P. Delmas and others against the mayor and
board of aldermen of Pascagoula to restrain the issuance
of certain bonds. From an order overruling a demurrer
to the bill, defendant appeals.

The facts are fully stated in the opinion of the court.

*Mayes & Mayes,* for appellant.

*Ford & White,* for appellee.

COOK, J., delivered the opinion of the court.

The mayor and board of aldermen of Pascagoula, at a
meeting held on August 19, 1913, adopted the following
resolution:

"Whereas, it is the purpose of the mayor and board
of aldermen of the city of Pascagoula to build a public
wharf or dock on the east bank of the Pascagoula river,
and to that end will purchase property and construct said
wharf, and the necessary funds can only be had by and
through the issuance of bonds as hereinafter set forth;
and

"Whereas, bonds to the extent of twenty-five thousand
dollars, together with the present outstanding bonds of
the city, will not exceed seven per centum of the taxable
property of said city:

"It is therefore the purpose of the mayor and board
of aldermen of said city, and it is here now so proposed,
to issue at October, 1913, term of this board bonds of
the par value of twenty-five thousand dollars, and to be
called 'City of Pascagoula 1913 Public Wharf Bonds,'
each to bear interest at the rate not to exceed six per
centum per annum, the interest being payable annually,
one of said bonds to mature annually, the last of which
shall mature on the twentieth year from date of issuance
thereof, such bonds to comply with all the provisions of
chapter 99 of the 1906 Mississippi Code providing for

the issuance of bonds for municipalities; it being the purpose of board to issue said bonds unless twenty per cent. of qualified electors shall petition against same, in which event such matter shall be determined by election.

"It is ordered that notice of this proposal be published, as required by law."

Having adopted the resolution aforesaid, the mayor and aldermen proceeded to make publication of the same, as required by law, in the Pascagoula Chronicle, a newspaper published in said city. The October, 1913, meeting, mentioned in said notice, was held, and no adverse petition was presented, and no objection was made. Whereupon, at that meeting, the board adopted another ordinance, reciting, or purporting to recite, the facts in respect to the previous ordinance, and the notice thereof, and directing the bonds to issue.

The board thereupon advertised that they would receive sealed bids at their next meeting, and did receive bids therefor; but before the said bids were acted upon, and the bonds sold, these complainants filed a bill of injunction, praying that the bond issue be adjudged illegal and void, and that on final hearing the municipality be enjoined from issuing the same, or from issuing other bonds thereafter, on similar grounds. The demurrer was heard by the chancellor, and was overruled; whereupon this appeal was taken to this court.

The main point involved in this case is whether the mayor and board of aldermen had the power to issue bonds for the purpose of building docks, or wharves, and, incidentally, to purchase property for that purpose. In *Hazlehurst* v. *Mayes,* 96 Miss. 656, 51 So. 890, it was held that municipalities operating under chapter 99 of the Code of 1906 have no powers except those expressly given by the legislature, and that the power to issue bonds cannot be implied. In truth, about the only difference between the present case and the *Hazlehurst case, supra,* is that in this case the bonds are for wharves and docks,

while the bonds in the Hazlehurst case were park bonds. It is claimed, however, that this difference differentiates the cases under the circumstances which will be stated later.

First. We are earnestly urged to overrule the Hazlehurst case, because it is manifestly wrong. The able dissenting opinion in that case demonstrates that there is much to be said in support of appellant's views; but we believe that the opinion of the court is also supported by reason, and certainly it is supported by authority. We will therefore decline to overrule that case.

At the time the mayor and board of aldermen passed and published the resolution announcing their purpose to issue bonds to build a public wharf or dock on the Pascagoula river, the statutes then in existence did not in express words authorize the issuance of bonds for the purposes mentioned in the resolution. Appellant says that, as section 3327 of the Code of 1906—

"expressly authorizes the issuance of bonds for the establishment, alteration, and changing of the channels of streams or watercourses, the bridging of same and of bays, we contend that the purposes for which these bonds were proposed to be issued was in its substantial effect and its real design clearly within the purpose of the statute, as it was the establishment or change or alteration of the channel of a'watercourse, to wit, Pascagoula river."

This contention of appellant is expressed clearly in the brief of counsel, and we quote from the brief as follows:

"The bill shows that, pursuant to the recommendation of the corps of engineer of the United States government, made in 1910, the congress of the United States, in the general rivers and harbors bill, which was approved on March 4, 1913, made an appropriation for the purpose of dredging out a channel in Pascagoula river, from Moss Point to the mouth of that river, and also from the mouth

of said river, to Horn Island, and for the im-
provement of Horn Island Pass, being a channel, there-
fore, extending from Moss Point out to the Horn Island
Pass, off the coast. It will be observed that of this chan-
nel, so proposed to be dredged out by the United States
government, two miles of it, according to the showing
of the bill, was in and through that section of the river
which if not within the limits of the city of Pascagoula,
still constitutes the water front of that city, and to all
practical purposes was in Pascagoula.    Nowhere does
this bill allege that the twenty-five thousand dollars pro-
posed by the board of mayor and aldermen to be put into
this enterprise, was disproportionate as compared with
the entire investment necessary. The bill further shows
that this large work which the government undertook to
do was made contingent on provision being made by
Pascagoula for a landing place in that city, with a front-
age of eight hundred feet, and a width of one hundred
and fifty feet, without which this work by the government
would not be done .

"It seems clear, therefore, that the precise way in
which the twenty-five thousand dollars to be contributed
by the city was expended is wholly immaterial, and of
no legal consequence in the application of this statute.
The United States undertook to do the dredging of the
channel, but on a certain condition. That condition was
that a landing place should be provided. If the twenty-
five thousand dollars proposed to be provided by these
city bonds was used in the acquisition of the landing
place and the construction of the wharves, to make that
landing place accessible from the channel, and to give
shipping facilities, it was just as much a payment by the
city for the dredging work, to all practical intents and
purposes, figured either from a business standpoint or a
legal standpoint, as if the twenty-five thousand dollars
had been employed in running a dredge boat and crew.
The dredging was to be done; and how? Not to be paid

for directly by the city; not that the whole burden of it should be assumed by the city, but by the appropriation of twenty-five thousand dollars of bonds, the United States being paid for the dredging work done within the limits of the city—not in such bonds, but in a landing and wharf, which it agreed to take in lieu of the bonds. That is the substantial effect of the proposition and arrangement, as made by the government; and it is clearly within the equity, and, indeed, within the terms, of section 3327.''

We think this contention may be answered by the published resolution of the board, which sets out the intention of the mayor and board of aldermen to issue bonds to pay for the building of a wharf or dock, and no mention is made of their purpose to expend the funds to be acquired from the proposed bond issue in the alteration or change in the channel of the river. It will not do to say that the mayor and board of aldermen may give notice of their purpose to sell bonds of the city for an unauthorized purpose, and, when their proposed action is challenged, they can say that, while it is true we have no authority to issue bonds for the purposes mentioned in our notice to the taxpayers, yet, as a matter of fact, we do not intend to use the money for the purpose mentioned, but for a different and authorized purpose.

Appellant says, further, that conceding that the mayor and board of aldermen were not expressly authorized to issue the bonds in question by any statute in existence at the time the resolution was adopted and published, we nevertheless have the power now, because the legislature subsequently conferred this power upon the city. This contention is based on chapter 147, Laws of 1914, which seems to have been passed for the purpose of conferring upon the corporate authorities of municipalities authority to issue bonds for the purpose of raising money to carry out any of the powers conferred upon them by law. At any rate it is certain that the purposes for which corporate

authorities may issue bonds are greatly extended by the law in question. Section 7 of this act of the legislature is in these words:

"That this act shall in no way affect the validity of any bonds heretofore issued, or of any bonds which may have been heretofore authorized at an election held under existing law, whether the bonds so authorized have been issued or not, and shall not affect or repeal any private or local laws now in force and effect authorizing the issuance of bonds for any purpose."

Is this a curative statute, which validates all proceedings taken before its passage, unless the proceedings in question fall within the exceptions mentioned in section 7? By this section it is expressly provided that the chapter "shall in no way affect the validity of any bonds heretofore issued, or of any bonds which may have been heretofore authorized at an election held under existing law, whether the bonds . . . have been issued or not." It will be noted that the bonds in question had not been issued when this act was passed, nor had they been authorized at any election. Subdivision "j" of section 1 of the act expressly authorized the issuance of bonds for "the construction of wharves, docks and harbors and establishment of landings, etc." The bonds sought to be issued do not fall within either of the classes excepted by section 7 of the Act of 1914. The argument of appellant is aptly stated thus:

"Thus we have the statute on its face recognizing the fact that its provision might be taken to be retroactive or curative, and then proceeding to enumerate the classes of bonds which shall not be taken to be in any wise affected or cured by the statute. In such enumeration, it describes two distinct classes, and these bonds do not fall within either class. Here is a clear application of the rule of construction, *a mentio unius exclusio alterius est*. There is a substantial distinction. These bonds have not been issued. They have not been authorized at

108 Miss. 7

an election; but they are duly and legally provided for by ordinance, such ordinance being passed, without opposition, and no election, therefore, being necessary. The statute was carefully so drawn as to avoid curing any invalidity in bonds previously issued; also to prevent curing any bonds over the proposed. issuance of which any such opposition had developed as necessitated and brought about an election by the qualified voters. To all other classes of bonds, if any, except those two, it was the clear intent of the legislature that the curative statute should extend; and these bonds fall within that category.''

In *Hazlehurst* v. *Mayes, supra,* referring to municipalities, this court has said:

''It is an elementary principle of law that as such it has no powers except those delegated to it by the state. It is equally well established that its powers are to be construed most strongly against a right claimed by it and not clearly given by the statute. . . . When there is any doubt as to whether or not a municipality has the power to do or not to do a certain thing, this doubt must be resolved against its charter powers.''

It will be presumed that when the act of 1914 was passed the legislature knew the rule of construction thus expressed by this court, and therefore, if it was the purpose to apply the amendatory chapter to all unfinished proceedings looking to the issuance of municipal bonds other than the classes enumerated and excepted, it would have been easy to have employed affirmative language to express that intention. The statute is not affirmatively retroactive, but it is insisted that the mention of certain classes of proceeding which the act shall not validate necessarily implies that it was the legislative intent that all unfinished proceedings not mentioned are validated by the act. In other words, this argument amounts to this: Admitting that the city authorities were not empowered to issue bonds for the purpose mentioned in their resolu-

tion at the time the resolution was adopted and published, they have the power now, because the subsequent act of the legislature supplied the power, not in express words, but by a general extension of the power of municipalities to issue bonds and by enumerating the class of cases to which the act shall not apply.

It could not be argued that the act in question was in express terms to be construed as retroactive and curative, or either; but it is argued that it must be inferred that such was the purpose of the legislature so far as these bonds are concerned, because, by saying what classes of transactions were not to be cured by the act it was the intent to supply the nonexistent power to issue bonds in all instances not embraced in the enumerated excepted classes. We cannot assent to the soundness of this argument. The only thing which can be necessarily implied by section 7 is that the legislature had in mind a purpose not to validate a certain class of cases *in fieri,* but did not have in mind the idea of validating any kind of unauthorized attempts to issue bonds not authorized prior to the passage of the statute. Statutes not expressly made retrospective in terms are otherwise construed, if possible, and where retrospective are construed as narrowly as possible. 8 Cyc. 1022.

A curative act, in the ordinary sense of that term, is a retrospective law acting on past causes and existing rights. Such laws are passed to validate irregularities in legal proceedings, or to give effect to contracts for failure to comply with technical legal requirements. Cooley, Const. Limitations, p. 454. A curative act is one intended to give legal effect to some past act or transaction which is ineffective because of neglect to comply with some requirement of law. 8 Cyc. 1023.

*Affirmed.*